When the Founding Fathers signed the Declaration of Independence, every school child knows that they committed treason. They told King George that government derives its authority from the people, not God. What people often don't consider is that they also committed heresy, for which they could have been drawn and courted. An intrinsic, a bedrock principle of our culture, of our government, is the concept of liberty, which the court in the of existence, of meaning, of the universe, and of the mystery of life. Metaphorically, it is our zone of conscience, in our hearts and in our minds, where we choose who is our God, what is our God, what does it mean to be a human being. That liberty interest protects the rights of the Mennonites, in the Hobby Lobby case, to decide for themselves that a human life begins at conception, without interference from the government. Dr. Michael D. Parson Counsel, I want to ask you, you're diving into, and I appreciate that, the religion issues to a great extent, but I want to talk to you about what's actually before us. In the appellate brief, you make the point that the undue burden claim and perhaps the hybrid rights claim are both before us, but I didn't see either of those things in the complaint in any way. And so, I just want to know what's before us, and make your best case that those two claims are actually before us. Those claims are before you, because the religion clauses are at the root of the zone of conscience in the Casey analysis. The religion clauses are at the root of the right under the hybrid rights analysis, as is the right of privacy, which is a due process right. Now, I don't even see any of that in the complaint, and I'll direct your attention to paragraph 22 of the complaint, where you say, this is an action for declaratory relief, the defendants are acting under color of state law, but then you're very specific about what's going on there, under the establishment and free exercises clauses, in obtaining an abortion, and then you go on and say, this is about the religious beliefs as the adherence of the tenants of the satanic temple. So, I don't see, I don't see the words undue burden, I don't see the words Casey, and all of the individual allegations in addition to this are all about religion. Because religion is at the heart of the undue burden analysis in Casey. The heart of Casey is this concept of the zone of conscience, and it derives its existence initially from Griswold, from the concept that privacy, right, privacy is at the heart of our ability to decide for ourselves procreation. It's at the heart of the, all of the cases that led up to Roe v. Wade, about the right of individuals to decide for themselves procreation. So you would make the argument, and I think this is where you're headed, that whether or not the undue, and you would claim that it is, obviously, but whether or not the undue burden claim, and perhaps even hybrid rights, depends on us accepting the principle that religion is at the heart of the undue burden analysis. No, that the zone of, that religion is at the heart of the zone of conscience. Okay. Which is at the heart of the undue burden analysis. Which is at the heart of the undue burden analysis. I think we're saying the same thing, you're adding a step. Okay, thank you. Very helpful. And the Supreme Court did not lend a lot of illumination to this issue with the American Legion case about what kind of framework do we use in religion clause cases. In fact, it says the contrary. It says you can't tell. It says you can't really tell what the framework is, and it changes a lot. It's very context specific. I mean, that's what the American Legion case is. It's very, it's context specific, and so our starting point here in this case is the body of law that is, is Casey, which is in turn built on the body of law that developed the fundamental rights of decision on procreation. Now, the Supreme Court has never recognized your hybrid right theory in conjunction with undue burden or even due process, right? In Smith, they list freedom of speech, freedom of press, right of parents to education. I'm sorry? I say in the Smith case. Yes. You know, a 1990 case, they list freedom of speech, freedom of press, and the right of education of children as a possible hybrid right, free exercise in conjunction with those. Right. In our case, it's free exercise in conjunction with the right of privacy. But the Supreme Court has not made that yet, right? That's correct. Okay, thank you. This case has. This circuit has adopted the hybrid rights doctrine in two cases. So, yes, you're correct. The Supreme Court has not. Counsel, I do have one other preliminary question. Is Doe asserting an as-applied or a facial challenge to the statute? As-applied. And in that regard, I'd like you to address standing. You may be familiar with our unpublished decision in a similar case, a Satanic Temple versus Parson, where the court found there was no standing because Doe was not pregnant at the time the action was initiated. Doe was pregnant at the time this action was initiated. She has standing under Roe. And that is pled. That is pled. Tell me our two cases you say that recognize hybrid right. Let's see here. Your Honor, I don't have them off the top of my head. Oh, that's okay.  We'll find them. I believe one judge on this panel was an author of one of those cases. One of them is Telescope. Now, you're familiar, of course, with the Missouri Supreme Court's decision last February. Yes, I am. Is it enlightening in any regard in this case? No, it's not. Not one bit, huh? Not one bit. Same issue? Is it same parties even? It's not the same parties. It's a different Doe. It's a different Doe. Absolutely. Okay, different Doe. Definitely the same defendants, right? Yes, the same defendants. Same defendants for sure. Different Doe. But there was no undue burden claim made in the state case. The Missouri Supreme Court did not take up any of the claims under the free exercise clause. That was an establishment they ruled on. Establishment they ruled on. on the grounds that we had to have specifically alleged and argued that the preamble, Section 1.205-1, was a violation of the Establishment Clause. With all due respect to the Missouri Supreme Court, I think that's a very, very rigid reading of the Establishment Clause. We're talking here about the statement that is made in the booklet, and we do allege that the creation of that booklet derives from basically the body of law that is being enforced by the defendants, which would include the preamble. No cert was sought on the Missouri Supreme Court. No, that's correct. Thank you. What do we do with the, on that point specifically, what do we do with the McCrae case, where the Supreme Court basically says just because something may be associated with religious beliefs, here, life, with Christian beliefs, that's not enough to make an Establishment Clause violation. McCrae is pretty clear about that. You have to have something more. You have to have something more. And so the Court says. And we do have something more here. We have a specific targeted action against a specific targeted individual on a specific religious belief. We also have to look at McCrae in light of the American Legion case. You know, the Court seems to be moving in a direction, the Supreme Court seems to be moving in a direction, of acknowledging that religious statements are part of the fabric of our society. God save this honorable court. Okay? And that those statements have legitimacy, A, if they do not incite sectarian division, and B, if they have a long history of acceptance. If they are the kind of statements that knit us together as a society, they're acceptable. The Brandenburg Cross was not offensive to anybody. Not the Brandenburg, the Bladensburg Cross was not offensive to anybody. It was a symbol in the community. The statement that a human life begins at conception is not the Bladensburg Cross. It is a very divisive statement. Yeah. Missouri is the only state in the Union that has it. It is the only state that what? It is the only state in the Union that has it. Now, wait, we have an in-bank case with almost the same words. Oh, you mean the Rounds case? Right, for example. No, no, the Rounds case had a biological definition of a human being. Yeah, but other than that, once you go from that, it's almost the same words, isn't it? No, it's not almost the same words. Okay. It's not. You think they're pretty close? It's a philosophical construct. In the Rounds case, it was a biological construct. And I would point out that in the Rounds case, that was a facial challenge. And there was no proof or evidence that the language that was used in the South Dakota statute actually influenced or affected any pregnant woman seeking an abortion. In our case, it does. It's offensive to Judy Doe. It is contrary to her liberty, to her right to believe for herself. It must be delivered by her physician, right? I'm sorry? It must be delivered by her physician, right? That's correct. And there's no limits on what the physician can say, right? Oh, no, that's not true. They certainly didn't say that in Rounds. No, I'm not talking about Rounds. I'm talking about your case. Yes. In your case, it must be delivered by the physician, right? Yes. The booklet. And there's no limits on what the physician can say in delivering it, right? The physician delivers the booklet, okay? So it's not that the physician delivers the statement. Right. All right. But what you're basically doing by having the physician deliver the booklet is give him clerical garb and let him preach Catholic dogma. Well, Counselor, they can immediately say it's Catholic dogma. I'm sorry? The physician can immediately say this is Catholic dogma, right? He doesn't. If it said that in the booklet, that would be one thing. If it said in the booklet, okay, here is a list. Here are all the philosophical bases upon which you can decide whether your fertilized egg is a human being. Here's the Buddhist tradition. Here's the Muslim tradition. Here's the Jewish tradition. This would be a different case. It's not. It takes one very specific philosophical religious statement. This court itself has said that it's the adoption of an impermissible theory of when life begins. This court said it. Are you arguing that Webster is still good law? I'm arguing that that aspect of Webster is still good law. You can't put the toothpaste back in the tube after it's out. How can that be in light of the Supreme Court's clear statement that the states are free to promote childbirth over abortion? They can take sides. The Supreme Court did not specifically address the specific point that was made in Webster 1, that the language represents an impermissible theory of when life begins. The Supreme Court sidestepped it completely and left it for a disposition in a case such as this where the language is actually applied and used in an abortion. Suppose we have the reverse scenario. Suppose that we have a scenario in which the state makes a statement that we believe strongly in a woman's right to choose and that abortion should be freely available. Would that violate the Establishment Clause because it aligns with the views of the satanic temple? It would depend on the circumstance of the woman seeking the abortion. There are, I'm sure, women who come before into an abortion clinic who have not made up their minds and that they are looking to the doctors, they are looking to the professionals for guidance. I'm sure that's the case. This isn't that case. She walks through the door and she has already made up her mind. She knows what she wants to do. But here's the problem I'm having with it. If we don't take McCrae's advice seriously, what is a state to do? A state, I think, under your view, just simply can't take a position without risking litigation. A state can do what they do in my home state of New Jersey. They can just give a woman an abortion without lecturing her about whether she's a good person or a bad person or committing murder or not committing murder. They can look at it as what it is correctly, a medical procedure. You don't get involved in the morality of removing an appendix. But the problem I have with that is Casey and some of these other cases have said that it's permissible for a state to take a position. It is. And so I don't know how to reconcile what you're telling me with what the Supreme Court has told us. No, because Casey permits truthful and non-misleading information. So, for example, we don't have any objection to Judy Doe being told that the father might be required to provide child support for the child. We don't have a problem with that. That's truthful information. It's not misleading. But what the Missouri tenant does is cross the line and promote a subjective belief. So going back to your question, to the extent that the state tries to interject its subjective religious belief into the decision-making process, it then intrudes upon the zone of conscience and thereby causes an undue burden and is a violation of her rights under the religion clauses. You're a dear rebuttal to me. I've been having such a good time I've lost track. I have reserved the rest of my time, and I will do so. Sure. You may. Mr. Reed. Thank you. Judges, and may it please the Court, Peter Reed for the State of Missouri. This Court and the Supreme Court have upheld informed consent laws under Casey's Undue Burden Standard and the Free Speech Clause. Missouri's informed consent law does not violate the religion clauses either for at least five reasons. Start with the Establishment Clause claim. First, Doe's Establishment Clause claim fails to get off the starting blocks because it does not allege that Missouri's informed consent law is one respecting an establishment of religion. This Court has already asked a few questions about this in regards to the McRae decision. This is not a case where we're talking about a monument of a cross. This is not a case talking about legislative prayer or other activities with obvious religious connotations. Under McRae and McGowan, a statute like this one, an informed consent law, to ensure that a patient is voluntarily undergoing a medical procedure without coercion is not a law respecting an establishment of religion at all any more than a law against larceny or against homicide or the Clean Water Act. Those laws also may be in accord with religious beliefs of some religious groups, but that doesn't make them an establishment of religion. Until there is an establishment of religion, you don't have an Establishment Clause claim. We don't even need to reach either Lemon or the decision in American Humanist and the historic analysis there because we don't have a law or an activity with obvious religious connotations like we did in that case. We don't even need to reach Lemon or whether Lemon applies because we don't have that initial requirement of a claim. Can you tell from American Legion cases, probably the most recent, the status of Lemon? The status of the Lemon test? The Lemon test, the Lemon doctrine. I think that the Lemon test is either gone or nearly entirely gone. I think here the analysis looks exactly the same. Under American Humanist, I think the question is you have something, you have a cross that has religious connotations. The Supreme Court directs us to look at the history of that monument, those kinds of monuments, to see whether it may in fact have a secular purpose. And then the Supreme Court did not apply Lemon because the claim there failed to meet this initial step. There was, when you looked at the history, when you looked at that kind of monument and the specific history of World War I monuments behind the particular Bladenburg Cross in that case, there was no establishment of religion. It didn't pass that initial step. And so there was no question about whether Lemon or any other test needed to be applied. It was a secular law with a secular purpose. And the same is true here under Harris v. McRae. Because you have a law like the one in Harris v. McRae that has a clear secular purpose and no obvious religious connotation, there is no establishment cause claim. It never gets off the starting blocks. But there are a number of secular purposes under Lemon or any other test that the Supreme Court has applied under the Establishment Clause. The Supreme Court's cases in Casey v. Gonzalez point to two of these. One is the state's obvious interest in voluntary, informed, non-coercive medical decisions. This is true in the abortion context, just as it would be true for a kidney transplant  Medical procedures should be voluntary. They should be informed. They should not be coerced. An informed consent law serves the same purpose in this context as it serves in any of those contexts as well. And second, Gonzalez and Casey recognized the state's legitimate and compelling interest in preserving and promoting fetal life. Gonzalez said the state may use its regulatory authority to show its profound respect for life within the woman. And they made the analogy to the kidney transplant. You would expect that when someone undergoes a kidney transplant, that informed consent does not only involve the risks to the patient, but also to the donor, because that is part of the universe of that informed consent decision underlying the medical procedure. Counsel, I'd like to have you address what claims are actually before this court. I know Judge Strauss addressed the undue burden claim. What about the free exercise claim? Does the complaint actually allege facts sufficient to allege a free exercise claim? The reason I ask the question is it didn't seem clear to me whether the DOE is alleging religious beliefs or just political or personal policy preferences. Your Honor, our position is that the complaint only alleges secular beliefs or personal policy preferences. And there are two paragraphs here that I think are relevant, paragraph 3 and paragraph 38. The complaint alleges that DOE is a member of the Satanic Temple, that's paragraph 3, and that she agrees with some of the tenets of that organization, that's paragraph 38. As to the organization, we know that the Satanic Temple is a recently created anti-religion political advocacy group. They've publicly said that they, quote, don't believe in Satan, unquote, but simply, quote, share a, quote, distaste for organized religion, unquote. And you can see this in the complaint. It's pled in paragraph 3 to say the Satanic Temple is merely an advocacy group and an association of politically aware Satanists, secularists, and advocates for individual liberty, unquote. Counsel, aren't you up against, though, the Supreme Court cases that says anti-religion is a religion? I'm doing this shorthand, and you can quarrel with my premise, but that is a short summary of them. Right. So in Frazee, the Supreme Court said that personal preferences or secular beliefs are not religious beliefs and do not make out free exercise claim. I think that's what we have here. We have a political advocacy group asserting that it's a political advocacy group in the complaint, and that's all we have. That doesn't add up to sincerely held religious beliefs, even if proven. In other words, if you could prove that the Satanic Temple was, in fact, an advocacy group, it's an association of politically aware Satanists, secularists, and advocates for individual liberty, advocates for individual liberty, all you would have is an expression of personal preferences or, at best, secular beliefs. That doesn't add up to religious beliefs. Well, the Supreme Court's also said we're not supposed to question what's a central belief, a subsidiary belief, a side belief, a part belief in religion. Is this the stage of litigation to be in this decision? Right. And don't hear what I'm not saying. I am not in any way suggesting that the Satanic Temple is not what they say it is. I'm saying that if the Satanic Temple is what they say it is, then they have not made out a religious claim. What they have pled, taken as true, is that the Satanic Temple is an association of politically aware Satanists, secularists, and advocates for individual liberty. That's paragraph three. I'm not questioning the sincerity of that fact. I'm not questioning the truthfulness of that fact. And that's why this is the appropriate stage to address this question. Because it is not a religious group, it's not asserting religious beliefs. It is asserting political preferences, personal preferences, a political position about individual liberty. It is not asserting religious beliefs. And the same is true in paragraph 38. There we simply have agreement with this organization's tenets. Agreement with a political advocacy group is not a religious belief, and it is not alleged as such. To get back to Judge Benton's question, though, it says, the Satanic Temple holds the following religious beliefs, and then lists six things. Isn't that enough? I mean, hasn't she done enough to at least plausibly allege it at the pleading stage? I think the question is whether if you take those statements following the colon as true, whether that makes that a sincerely held religious belief. And I don't think it does because those statements, because this organization is not a religious organization and its tenets are not religious either. They are merely political. If you look at those tenets, they come down to really two things, a belief in personal bodily autonomy and a belief in the right to make decisions in accordance with the best scientific understanding of the world. And I don't think, as pled in this complaint, those can be taken as sincerely held religious beliefs. You don't think human tissue as part of her body could be a religious belief? I think that it could be a religious belief. I think, as pled in this claim, as agreement with the tenets of this group calling itself the Satanic Temple, that's not a religious belief. I asked opposing counsel about this. I know you maintain this in your briefs. What about the undue burden and hybrid rights theories? You heard what I asked opposing counsel. What's your view of what was pleaded and what was not pleaded in regards to those claims? Your Honor, I don't think that there is either an undue burden, an independent undue burden claim or a hybrid claim pled in the complaint. My friend on the other side pointed to paragraph 57 of his brief as the basis for this. It just doesn't say that. It simply uses the word burden, and I don't think that's enough to plead this kind of claim. But even if the complaint did plead it, this Court and the Supreme Court have never recognized this kind of hybrid claim in this context. And frankly, more important, I think that Casey and this Court's decision in Fargo Women's Health have already said these kind of laws do not create an undue burden anyway. We don't get past, we don't create some kind of super added standard when this Court has already said that these laws satisfy the undue burden claim. And frankly, I think that's why it's not pled as a separate claim here. This Court's already decided it, and there's nothing left to decide here. In addition to the question of whether there is a sincerely held religious belief pled in the complaint, I think that there is a serious question of whether when you look at those specific beliefs listed in paragraph 38, whether there is, in fact, a burden on those beliefs at all. I mentioned earlier those tenets in 38 kind of come down to a couple of different things. But the allegations there don't add up to a burden for a couple of reasons. As to personal autonomy, the informed consent law is meant to make sure that there is a voluntary decision. Signing a statement saying that there is a voluntary decision doesn't violate a belief in making voluntary decisions. As to scientific decision making, Missouri's informed consent law requires clinics to provide scientifically valid information. That's what this Court said in rounds, looking at a very similar list of scientific facts. These are scientific facts. That's why it was a conduct claim in rounds and not a speech claim in rounds. And as the Court said in rounds, the fact that a fetus is a complete, separate, distinct, and unique genetic code that indicates that it is human is a scientific and indisputable fact. And that was true in rounds. It's true here, too. In other words, even if the law required her to read that statement and sign off that she understood it, that would not violate the allegations in paragraph 38 or burden the allegations in paragraph 38. But this case is a lot simpler than that because there is no requirement that she read the booklet or that she open it. And there is no requirement that she view an ultrasound. All that is required is that she sign an acknowledgment that the booklet was provided and the opportunity was provided. A voluntary opportunity to do something does not burden a religious belief as pled in this complaint. And it follows that signing a statement verifying that she was given those opportunities does not burden a religious belief as pled in this complaint. Don't hear what I'm not saying. I'm not saying that signing something could never be a burden on a religious belief. I'm saying that the religious beliefs alleged in paragraph 38 are not burdened by the specific law at issue in this case. If the Court has no further questions, I urge it to affirm. Thank you. Thank you, Counsel. Mr. McNutt. The state says that the Satanic Temple is an anti-religious organization. It's not in the record, but the Satanic Temple is actually registered with the IRS as a church. And its religious beliefs are not anti-religious beliefs. Well, your complaint says religious beliefs, right? It says religious beliefs. At this stage, should we go beyond that? No. What's your best authority at this stage? We should not go beyond that. Yes, except it is true. No, I'm sorry. What's your best authority? A case or something that says at this stage we don't go beyond you saying religious beliefs? Oh, I'm sorry. Thank you. Proceed. Okay. Missouri Tenet. The statement that a human life begins at conception is a religious statement. Okay. They've argued that it's a statement of fact. It can no more be a statement of fact than the state can legislate that Jesus Christ arose from the dead. It is a philosophical proposition. They argue that it is a secular purpose. You note that the legislature means what it says when it adopts language. There's an extensive argument here about the state promoting the interests of the unborn, but that doesn't appear anywhere in the statute. The interests that the statute as framed promotes are the religious underpinning for that belief. Going back to McRae and Harris, I want to stress that neither of those cases involved trying to change the hearts and minds of people. It was just giving somebody a day of rest. Well, Harris and McRae is talking about funding, which changes hearts and minds, whether you've got the money to do something. So help me. That seems like a fine line. It is a fine line. But in this line, in this case, the line is actual words, actual words that have to be considered or, in this case, repudiated. I mean, they say it's no burden. It's like the evangelicals in the Sharp Holdings Company saying, well, you're not burdened by having to opt out of the ACA funding for abortifacients. They are. This court has recognized that being compelled to sign a document that is contrary to your religious beliefs is a sufficient burden to invoke. I think, counsel, I think that's really the crux of the matter. The acknowledgment simply acknowledges receipt, not agreement with. Can you address that? Well, that's Sharp Holdings. The acknowledgment didn't acknowledge approval or anything else. It was tacit understanding. It's like if the motor vehicle department said you have to acknowledge receipt of the Koran to get a license. You don't have to read it. You don't have to believe it. But you have to acknowledge receipt of it. It's the same thing. It's the same kind of burden. In the case of Judy Doe, her belief is she should not comply with a law that promotes the interests of her part of her body, the appendix. She should not have to comply with a law that denigrates her belief that a human being does not come into existence at conception. That's the burden. Sharp Holdings. If you have any other questions, I'd be glad to answer. Seeing none, thank you for your argument. Thank you. Counsel, case number 19-1578 is submitted for decision by the court. Would Ms. Grupe call the next case? Yes, Your Honor.